# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO: 08-0085** |
| **MOSE JEFFERSON** | **SECTION: "S" (2)** |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that Mose Jefferson's "Motion for a New Trial" is **DENIED**. (Document #195.)

### I. BACKGROUND

A jury convicted Mose Jefferson of two counts of bribery, in violation of 18 U.S.C. § 666, and two counts of obstruction of justice, in violation of 18 U.S.C. § 1512(b)(3), and acquitted him on conspiracy to commit bribery. Jefferson moves for a new trial, pursuant to Federal Rule of Criminal Procedure 33(a).

### II. DISCUSSION

**A. Legal standard**

Rule 33(a) provides: " Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." "The trial judge may weigh the

evidence and assess the credibility of the witnesses in considering the motion." United States v. Arnold, 416 F.3d 349, 360 (5th Cir. 2005). "The power to grant a new trial . . . should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict." Id. at n. 18 (internal quotation and citation omitted). "However, if a court finds that a miscarriage of justice may have occurred at trial, . . . this is classified as such an exceptional case as to warrant granting a new trial in the interests of justice." United States v. Sipe, 388 F.3d 471, 493 (5th Cir. 2004).

**B. Wharton's Rule**

Jefferson argues that charging him with both conspiracy to violate § 666 and substantive violations of § 666 violated Wharton's Rule against charging conspiracy where the substantive offense necessarily includes a conspiracy element. Jefferson argues that the fact that the jury acquitted him on the conspiracy count but convicted him on the substantive counts shows that this "mischarging" created juror confusion, which ultimately led the jurors to acquit on the count with the lesser penalty, but convict on the harsher count. Jefferson argues that Wharton's Rule prevents the government from double-dipping in its charging decisions by charging a conspiracy count where the underlying substantive count contains elements of conspiratorial conduct.

Wharton's Rule is "a doctrine of criminal law enunciating an exception to the general principle that a conspiracy and the substantive offense that is its immediate end are discrete crimes for which separate sanctions may be imposed." Iannelli v. United States, 95 S.Ct. 1284, 1287 (1975) (involving conspiracy to violate 18 U.S.C. § 1955, a federal gambling statute).

2

Francis Wharton identified the doctrine and its fundamental rational in his treatise on criminal law as follows:

> When to the idea of an offense, plurality of agents is logically necessary, conspiracy, which assumes the voluntary accession of a person to a crime of such a character that it is aggravated by a plurality of agents, cannot be maintained . . . . In other words, when the law says, "a combination between two persons to effect a particular end shall be called, if the end be effected, by a certain name," it is not lawful for the prosecution to call it by some other name; and when the law says, such an offense--*e.g.*, adultery–shall have a certain punishment, it is not lawful for the prosecution to evade this limitation by indicting the offense as conspiracy." 2 F. Wharton, Criminal Law § 1604, p. 1862 (12th ed. 1932).

Id. at 1288.

"Traditionally, the law has considered conspiracy and the completed substantive offense to be separate crimes. Id. at 1289. "[T]he conspiracy to commit an offense and the subsequent commission of that crime normally do not merge into a single punishable act." Id. at 1290. The Supreme Court "repeatedly has recognized that a conspiracy poses distinct dangers quite apart from those of the substantive offense." Id. "The basic rationale of the law of conspiracy is that a conspiracy may be an evil in itself, independently of any other evil it seeks to accomplish." Id. (internal quotation and citation omitted).

Classic Wharton's Rule offenses--adultery, bigamy, incest, and dueling–are crimes that are characterized by the general congruence of the agreement and the completed substantive offense." Id. at 1292. "The parties to the agreement are the only persons who participate in commission of the substantive offense, and the immediate consequences of the crime rest on the parties themselves rather than on society at large." Id.

"Wharton's Rule applies only to offenses that require concerted criminal activity, a plurality of criminal agents." Id. at 1293. "[A]bsent legislative intent to the contrary, the Rule supports a presumption that the two merge when the substantive offense is proved." Id. at 1294. In such a case, initial dismissal of the conspiracy charge is not required. Id. at n.18. "When both charges are considered at a single trial, the real problem is the avoidance of dual punishment." Id.

Jefferson was convicted of making payoffs to former school board president, Ellenese Brooks-Simms, in violation of § 666(a)(2). The Fifth Circuit has not specifically addressed whether Wharton's Rule applies to § 666; however other courts have held that it does not. "Wharton's rule applies only to offenses that require concerted criminal activity, a plurality of criminal agents." See United States v. Morris, 957 F.2d 1391, (7th Cir. 1992) (internal quotation and citation omitted). The substantive offense of paying a bribe may be committed by a single person and does not require concerted action; therefore, Wharton's Rule does not apply. Id. "[T]he focus of a Wharton's Rule analysis after Iannelli must be on the statutory elements of the substantive offense involved rather than on the particular evidence offered to prove it in a specific trial, that is, whether it is possible to sustain a conviction under the offense charged on grounds that differ from those necessary to sustain a conviction on the conspiracy count." United States v. Previte, 648 F.2d 73, 78 (lst Cir. 1981). Such a reading of the Rule is especially appropriate in bribery offenses, which "implicate broad social concerns and have an impact far beyond that of the consensual, victimless offenses that lie at the heart of Wharton's Rule." Id. at

4

79.

Accordingly, the court concludes that Wharton's Rule does not apply to Jefferson's conviction for bribery. Moreover, there is no danger of dual punishment in this case because Jefferson was not convicted of both the conspiracy count and the substantive offense.

## C. Unavailable witness

Jefferson contends that he was denied his right to due process and was prejudiced because he was precluded from calling a material defense witness, Renee Gill Pratt, who would have provided "substantial favorable evidence" at trial. Jefferson does not provide new arguments in his motion for a new trial, but reurges the argument put forth in his motion to continue the trial--that Gill Pratt is unavailable because she is a defendant in criminal action No.08-0140, pending in another section of this court. (Documents # 83 and #100.) Jefferson argues that Gill Pratt was willing to testify in this case, but she would exercise her Fifth Amendment privilege as long as No. 08-0140 was pending.

As a Louisiana State Representative in 2001, Gill Pratt sponsored a $300,000 appropriation for the purchase of the "I Can Learn" program for schools with which she was affiliated, Holy Ghost Catholic School and Xavier University Prep Academy, and Jefferson received a commission. Jefferson contends that Gill Pratt would testify about the history of JRL Enterprises' attempts to sell its products to the New Orleans school system before Jefferson was involved, the efficacy and legitimacy of the learning program, and that she was not offered nor did she receive anything of value in exchange for her sponsorship of the state appropriation for

the program.  Jefferson further argues that Gill Pratt's testimony was material because she was present at a meeting prior to the 2000 School Board election at which Jefferson tried to talk Simms out of running for the School Board.

Jefferson has not demonstrated that a miscarriage of justice occurred at trial.  It is noteworthy that the issue of Gill Pratt invoking her Fifth Amendment right did not arise because she was not summoned to testify at trial.  Moreover, other witnesses testified regarding JRL Enterprises' efforts to sell its product in Orleans Parish and the legitimacy of the program. Jefferson has not shown that testimony that Gill Pratt did not receive anything of value for sponsoring the State appropriation or that he tried to convince Simms not to run for the School Board is material to any count of conviction and that he suffered prejudice.

**D.  Admission of taped conversation**

Jefferson contends that he was prejudiced when the jury convicted him of obstruction of justice after hearing his taped conversation with Simms, in which he suggested to Simms that she and her daughter, Stacy Simms, exercise their Fifth Amendment right not to testify if called before the grand jury.  Jefferson relies on United States v. Farrell, 126 F.3d 484, 488 (3$^d$ Cir. 1977) to support his argument that his noncoercive efforts to persuade Simms not to disclose information about the conspiracy does not violate 18 U.S.C. § 1512(b)(3).

In Farrell, the Court of Appeals agreed with Farrell that the phrase "corruptly persuades" does not mean "simply persuades with the intent to hinder communication to law enforcement because such an interpretation would render the word 'corruptly' meaningless." Id. at 487.  The

6

Court of Appeals was confident that "attempting to persuade someone to provide false information to federal investigators constitute[s] 'corrupt persuasion' punishable under §1512(b)." Id. at 488. However, the Court of Appeals was "similarly confident that the 'culpable conduct' that violates § 1512(b)(3)'s 'corruptly persuades' clause does not include a noncoercive attempt to persuade a coconspirator who enjoys a Fifth Amendment right not to disclose self-incriminating information about the conspiracy to refrain, in accordance with that right, from volunteering information to investigators." Id. The Court of Appeals concluded that "more culpability is required for a statutory violation than that involved in the act of attempting to discourage disclosure in order to hinder an investigation." Id. at 489.

In United States v. Shotts, 145 F.3d 1289, 1300 (11th Cir. 1998), the Court of Appeals held that "corrupt as used in Section 1512(b) is neither unconstitutionally overbroad or vague." Id. (citing United States v. Thompson, 76 F.3d 442 (2d Cir. 1996); disagreeing with United States v. Farrell, 126 F.3d 484 (3d Circuit 1997).) The Court of Appeals for the Eleventh Circuit believed "that the Second Circuit and the dissent in Farrell have the better reasoned position on this issue. It is reasonable to attribute to the 'corruptly persuade' language in Section 1512(b) the same well-established meaning already attributed by the courts to the comparable language in Section 103(a), *i.e.*, motivated by an improper purpose." Id. at 1301. The Court of Appeals was "unwilling to follow the Third Circuit's lead in imposing a requirement for an additional level of culpability on Section 1512(b) in the absence of any indication that Congress so intended and in the face of persuasive evidence that it did not." Id.

In this case, the taped conversation between Jefferson and Simms regarding her Fifth Amendment rights was not the only evidence that the jury could rely on in returning a verdict of guilty of obstruction of justice. During two consensually recorded conversations, Jefferson instructed Simms "to get to" her daughter and Rosa Dickerson to concoct stories for investigating authorities. See Exh. A. Accordingly, either under Farrell or Schotts and Thompson, Jefferson has not demonstrated that the evidence preponderates heavily against the verdict and that a miscarriage of justice has occurred.

**E. Denial of choice of counsel**

Jefferson contends that he was deprived of representation by Ike Spears, the counsel of his choice, because the government represented to the court that Brenda Foster Jefferson, whom Spears had previously represented, was an unindicted coconspirator who would testify at Mose Jefferson's trial. At the time of the disqualification hearing, Brenda Foster Jefferson had pleaded guilty in another case and was cooperating with the government. The government argued that Spears's loyalty during cross-examination of Brenda Foster Jefferson at trial would be divided between his current client and his former client, infringing upon the demand for a conflict-free resolution of the criminal proceeding.

Jefferson argues that the government created a false conflict of interest because Brenda Foster Jefferson was not called to testify at trial. The government argues that the anticipated Brenda Foster Jefferson testimony at trial that Stacy Simms was not a consultant and that Mose Jefferson controlled Southwind was not necessary because Jefferson changed the theory of his

8

defense.

The Sixth Amendment right to counsel of choice commands "that the accused be defended by counsel he believes to be best." United States v. Gonzalez-Lopez, 126 S.Ct. 2557, 2562 (2006). The right to counsel of choice is violated if the deprivation of counsel was erroneous, and no additional showing of prejudice is required. Id. "The right to select counsel of one's choice . . . has never been derived from the Sixth Amendment's purpose of ensuring a fair trial." Id. at 2563. "It has been regarded as the root meaning of the constitutional guarantee." Id. "Where the right to be assisted by counsel of one's choice is wrongly denied, therefore, it is unnecessary to conduct an ineffectiveness or prejudice inquiry to establish a Sixth Amendment violation." Id. The deprivation of the right to counsel of choice is a "structural error," which defies analysis by harmless-error standards because it affects the framework within which the trial proceeds. Id. at 2564.

"The Sixth Amendment right to choose one's own counsel is circumscribed in several important respects." United States v. Wheat, 108 S.Ct. 1692, 1697 (1988). Serious potential for a conflict of interest based on "divided loyalties" may be present if a defense attorney has previously served as counsel for a government witness. United States v. Gharbi, 510 F.3d 550, 553 (5th Cir. 2007) (citing United States v. Millsaps, 157 F.3d 989, 996 (5th Cir. 1998)). Where a court justifiably finds an actual conflict of interest, it may insist on separate representation. United States v. Wheat, 108 S.Ct. at 1698. The district court must be allowed substantial latitude in making the decision in cases where an actual conflict may be demonstrated before trial and "in

the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." Id. at 1699. "The District Court must recognize a presumption in favor of [defendant's] counsel of choice, but that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict." Id. at 1700.

The grand jury charged in the indictment that Jefferson controlled Southwind Consultants, Inc. and Southwind Consultants, LLC and used a Southwind bank account to make payments to Simms. Eddy Oliver, a 25-year friend of Jefferson, was the nominee president of Southwind Consultants, Inc. until it was dissolved on February 9, 2005. Brenda Foster Jefferson was the nominee president of Southwind Consultants, LLC, which was formed on January 28, 2005. The government's theory was that Jefferson installed Eddy Oliver and Brenda Foster Jefferson as nominee presidents to conceal his control of the money flow.

The government moved to disqualify Ike Spears because Brenda Foster Jefferson was a former client, who would be called to testify regarding her role as a corporate officer of a number of Jefferson-controlled entities. The government argued that Spears would be forced to breach the continuing obligation of loyalty to Jefferson or to exploit the confidences of his former client. In a supplemental memorandum, the government presented transcripts of grand jury testimony, *in camera* and under seal, indicating that Spears had represented Brenda Foster Jefferson during the course of the investigation and that she was "an unindicted co-conspirator critically linked to Southwind, the 'flow-through' company Mose Jefferson used to funnel

payoffs to Ellenese Brooks-Simms as part of the bribery and money laundering scheme set forth in the indictment." Rec. Doc. 32. The court held a hearing on October 1, 2008, and granted the government's motion to disqualify. Rec. Doc. 33. At a hearing to determine counsel, Jefferson informed the court that he had retained Michael Fawer to represent him. Rec. Doc. 34.

Jefferson has not shown that the disqualification of his counsel of choice was erroneous because it was based on a "sham assertion" that Brenda Foster Jefferson would be called as a witness at trial. Prior to trial, all indications were that Jefferson's position was that Southwind paid Stacy Simms for services she had provided, and Jefferson testified before the grand jury that he paid Stacy Simms for consulting work. See Exh. B. Again, in a hearing on Jefferson's motion to dismiss on April 1, 2009, counsel for Jefferson stated that the "defense position is we paid Stacy Simms, not perfectly legitimately, for doing work in conjunction with securing the contract. Now they may not like that." See Exh. C, 40. Counsel added "that they don't want us to show that it was Stacy who assisted in getting this contract through. All they want to do is have us say 'We paid $140,000 to Ellenese.'" Id. at 42. The government would have called Brenda Foster Jefferson to testify that she had only a nominee role and that the Southwind companies were controlled by Jefferson. However, at trial, Jefferson no longer maintained that Stacy Simms was paid for services provided to Southwind. Jefferson admitted that Stacy Simms was never a consultant and presented a defense strategy that the $140,000 payments to Simms through the Southwind account were gifts to a friend in need.

In addition to Jefferson's testimony, Eddy Oliver's testimony at trial concerning the two

11

Southwind bank accounts negated the need to call Brenda Foster Jefferson to establish that Jefferson controlled the accounts. Oliver testified that he originally started Southwind Consulting, Inc. with Jefferson to obtain federal funds for various projects. The company eventually collected rent from the various programs, which maintained their offices in Jefferson's property on Saratoga Street. Southwind Consulting, Inc.'s bank account was in Oliver's name, but Jefferson controlled the money in the account. Oliver signed ten or fifteen blank checks, which Jefferson kept along with the checkbook in a safe in his office. Oliver signed the blank checks that eventually were made out to Stacy Sims, but Oliver did not know Stacy Simms. After Hurricane Katrina, Jefferson told Oliver to close the account, and Oliver later discovered that another account for Southwind Consulting LLC was opened in Brenda Foster Jefferson's name.

The potential for conflict in Spears representation of Jefferson, in light of his prior representation of Brenda Foster Jefferson, was demonstrated before trial, notwithstanding whether the actual conflict arose as the trial progressed. Accordingly, Jefferson was not deprived of his Sixth Amendment right to counsel of his choice. The evidence does not support a finding that a miscarriage of justice occurred, and the motion for a new trial based on a Sixth Amendment violation is denied.

### III. CONCLUSION

Jefferson has not made a showing that the interests of justice require a new trial. Wharton's Rule does not apply to Jefferson's conviction for bribery, and there is no danger of

dual punishment because Jefferson was not convicted of the conspiracy count. Jefferson has not demonstrated that a miscarriage of justice occurred because Gill Pratt did not testify regarding the sale of "I Can Learn" to two private schools and Jefferson's advice to Simms that she not run for the Orleans Parish School Board. Jefferson has not demonstrates that the evidence preponderates heavily against the jury's verdict that he obstructed justice and that a miscarriage of justice occurred by the admission of evidence of a taped conversation between Simms and him. Jefferson has not shown that the government created a false conflict of interest that deprived him of his right to counsel of his choice, resulting in a miscarriage of justice. Accordingly, the motion for a new trial is denied.

New Orleans, Louisiana, this  30th day of November, 2009.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**